[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CONCERNING DEFENDANT'S MOTIONS FOR CONTEMPT
This matter involves two pendente lite motions for contempt (Motion #105 under date of June 7, 2000 and Motion #120 under date of September 15, 2000) which have been filed by the defendant.[1]
A contested hearing was held on September 18, 2000, October 12, 2000, November 13, 2000, and December 4, 2000, when the proceeding concluded.
On December 4, 2000 the plaintiff submitted a memorandum of fact and law. The defendant asked for time to respond with his memorandum of fact and law. The court granted the defendant's request. The defendant submitted his memorandum on December 26, 2000.
The court has carefully reviewed all of the evidence and testimony in this matter, as well as the memoranda submitted by counsel.[2]
 FACTUAL FINDINGS
The court finds that the following facts were proven at hearing by clear and convincing evidence:
The plaintiff and the defendant were married on November 4, 1989 in Milwaukee, Wisconsin. There are no minor children of the marriage.
On April 26, 2000, the plaintiff initiated the pending dissolution action, claiming irretrievable breakdown of the marriage. The return date was May 16, 2000. At the time the action was commenced, both parties resided together in the marital home located at 9 Windy Ridge Place in Waterford, Connecticut.
When the dissolution action commenced, automatic court orders which applied to both parties were issued, pursuant to Connecticut Practice Book § 25-5.
Per § 25-5, the automatic orders became effective as to the plaintiff when the dissolution complaint was signed on April 26, 2000. The orders became effective with respect to the defendant upon service of the dissolution complaint. A review of the court's file indicates that on April 29, 2000, John P. Sullivan, then a New London County Deputy Sheriff, made personal service of the dissolution writ, summons and CT Page 1719 complaint upon the defendant. Eleven automatic orders, mandated by C.P.B. § 25-5, issued in this case. The form on which they were printed clearly indicates that: "Failure to obey these orders may be punishable by contempt of court. If you object to or seek modification of these orders during the pendency of this action, you have the right to a hearing before a judge within a reasonable time."
The defendant has filed two motions for contempt, alleging violations of the automatic orders by the plaintiff. In his June 7, 2000 motion, defendant claimed that the plaintiff "has sold joint property without consent of the defendant" and ". . . has also withdrawn funds from the joint checking account and deposited them in her own personal account without consent of the defendant."
The defendant alleges that the plaintiff defied Automatic Order No. 1, which states: "Neither party shall sell, transfer, encumber, conceal, assign, remove or in any way dispose of, without the consent of the other party in writing, or order of the court, [assets] individually or jointly held by the parties, except in the usual course of business or for customary and usual household expenses or for reasonable attorney's fees in connection with this action."
The evidence at hearing established that the parties held a joint checking account with the Dutch Point Credit Union at the time the dissolution of marriage action was initiated. The plaintiff transferred $1,700.00 from that account into her individual account on May 5, 2000. On May 18, 2000, the plaintiff transferred $200.00 from that Dutch Point checking account into her individual account. On June 15, 2000 the plaintiff withdrew $1,737.23 from the joint account, which was thereafter closed (see Defendant's Exhibits 2, 3 and 4).
At some point prior to June 15, 2000 the defendant attempted to write a check for $1,800.00 from the Dutch Point joint checking account. The check was not honored, because the account then held less than the amount of his check. The defendant claimed that he was entitled to draw the $1800 from the account because it held his salary and business expense reimbursement sums from his employer. It was subsequent to this that the plaintiff withdrew $1,737.23 from the joint account and closed it.
Certain additional facts are also germane to the court's resolution of contempt motion #105. The plaintiff suffers from a medical condition which has required surgery and follow-up treatments. She was first diagnosed with the condition approximately two years ago. (Transcript, September 18, 2000, page 10.) Surgery was initially performed in January 2000, and the plaintiff has received subsequent medical procedures since that time. In February 2000 the defendant told the plaintiff that he CT Page 1720 wished to terminate the marriage. (Transcript, September 18, 2000, page 11.) As noted above, the plaintiff issued the dissolution complaint on April 26, 2000 and the matter was assigned a May 16, 2000 return date.
After the defendant revealed that he wished to end the marriage, the parties agreed to sleep in separate bedrooms. (Transcript, September 18, 2000, page 20.) Around that time, the plaintiff purchased a new bed for the room in which she was going to reside and sold an older bed and another item of furniture that had been in that room. (Transcript, September 18, 2000, page 20.)
In addition to his claim concerning the plaintiff's withdrawal of funds from the Dutch Point Credit Union, the defendant also contends that the plaintiff is in contempt for disposing of the two items of used bedroom furniture and for using a credit card to purchase the new furniture.
The evidence at hearing established that in June 2000 the plaintiff and the defendant agreed that they would sell certain items of personal property at a three-house yard sale conducted in their neighborhood. (Transcript, September 18, 2000, page 12.) This yard sale was held on June 10, 2000. On June 10, the defendant allegedly became intoxicated and damaged property in the marital home at 9 Windy Ridge Place. (Transcript, September 18, 2000, page 13.) On June 11, 2000, he allegedly made threats to the plaintiff and members of her family. (Transcript, September 18, 2000, page 13.) As a result of this alleged conduct, the defendant was arrested and the plaintiff secured a protective order from the criminal court barring the defendant from the marital home. (Transcript, September 18, 2000, page 13.) The plaintiff had exclusive control of the marital home and all of its contents, from the date of the defendant's arrest in June until early September 2000, when she relocated to Monroe, Michigan. The plaintiff's family resides in Michigan. (Transcript, September 18, 2000, page 27.) The plaintiff, who had been employed as a data entry technician for Northeast Utilities, at its Millstone facility, quit her employment in early September when she moved to Michigan. (See financial affidavits filed with the court on September 18, 2000, and Transcript, September 18, 2000, page 27.)
The plaintiff paid her attorney a retainer of $1,500.00 on April 28, 2000 (Plaintiff's Exhibit 6 and Transcript, December 4, 2000, page 7). She paid the additional sum of $258.94 to her attorney on July 7, 2000 (Plaintiff's Exhibit 6 and Transcript, December 4, 2000, page 7). Other payments were made on diverse dates in 2000. The plaintiff has paid $3,158.94 in total counsel fees (Plaintiff's Exhibit 6 and Transcript, December 4, 2000, page 16). As of December 4, 2000, the plaintiff owes a balance of $9,645.83 to her lawyers, minus $1,500.00 which was still in her retainer deposit on that date. (Transcript, December 4, 2000, page CT Page 1721 17.)
 ADJUDICATION (MOTION #105)
Standing Order No. 1 prohibits either party from selling, transferring, encumbering, concealing, assigning, removing or in any way disposing of assets individually or jointly held by the parties except with the consent of the other party, or an order of the court. Standing Order No. 2 prohibits either party from incurring unreasonable debts after the commencement of the dissolution action, including, but not limited to, further borrowing against any credit line secured by the family residence, further encumbrancing any assets, or unreasonably using credit cards, or cash advances against credit cards. The defendant has alleged that the plaintiff violated Standing Orders 1 and 2 by selling two used pieces of bedroom furniture and by using a credit card to purchase a new bed for the room where she had agreed to sleep. Given the parties' decision in February 2000 to stay in separate bedrooms, the court does not find it unreasonable for the plaintiff to have purchased new bedroom furniture, or to have disposed of older items in order to make room for that furniture.
There is no evidence proving that the use of the credit card to purchase this furniture was unreasonable. Additionally, there was no evidence at hearing which established that the defendant would be held responsible for this credit card debt, or would be otherwise damaged by it. The court finds that the defendant has not proven by clear and convincing evidence that the plaintiff's actions in disposing of the bedroom furniture or in purchasing the new bedroom furniture with the credit card constituted a willful and contemptuous violation of any standing order.
The defendant's other claim in Motion #105 is that the plaintiff's withdrawal of $3,637.23 from the joint Dutch Point Credit Union violated Standing Order No. 1. The court recognizes that the first withdrawal occurred on May 5, 2000, approximately one week after the plaintiff paid an initial $1500 retainer to her attorneys. However, the court also notes that the defendant has paid $3,158.94 in legal fees as December 4, 2000. The counsel fees paid to date are proximate to the amount of money withdrawn from the joint Dutch Point checking account. The court finds it likely that the withdrawn funds were either utilized for counsel fees, or used to replace money drawn from other sources to pay the initial retainer. The standing orders allow both parties to take "reasonable attorney's fees" from the marital estate for use in connection with the pending dissolution action. The court does not find that the sum of $3,158.94 which the plaintiff has paid to date in counsel fees is unreasonable. Accordingly, the court finds that the plaintiff's actions CT Page 1722 in withdrawing the money from the Dutch Point Credit Union account have not been proven by clear and convincing evidence to be willful and contemptuous violations of the standing orders.
Because the defendant has not proven by clear and convincing evidence any of the allegations set forth in Motion #105, that motion for a finding of contempt against the plaintiff is hereby denied.
 ADJUDICATION (MOTION #120)
The defendant filed Motion #120 on September 15, 2000. He alleged therein that: "On or about September 5 and 6, 2000 the plaintiff willfully violated Automatic Court Order by emptying the marital residence at 9 Windy Ridge Place, Waterford, Connecticut of all its contents (except two items) without (a) the knowledge of the Defendant, much less the required consent in writing, or (b) an order of the Court." The defendant also claimed in this motion that the plaintiff "removed all personal property from the Waterford residence . . . by selling, transferring, assigning, concealing or simply disposing of much of the property."
The following additional facts, which were proven by clear and convincing evidence at the hearing, are also relevant to this motion:
As noted above, the parties agreed to sell items of personal property at a three-house yard sale held on June 10, 2000. During hearing, the parties gave conflicting testimony concerning their agreement about that sale, and about the ultimate disposition of the personal property of the marriage. The defendant testified: "We had a small garage sale and we only agreed to sell items which [sic] items we — we mutually agreed upon some property that we did not want to have. And it was mostly some older items and things in the basement that we disposed of at a garage sale but it was only limited to a small amount of property." (Transcript, November 13, 2000, page S3).
The plaintiff offered a different account concerning the yard sale. She testified: "We agreed to the things that we were going to split up during the marriage and things that we did not want were to be sold at a yard sale. We had a three-house yard sale and we got rid of a lot of items." (Transcript, September 18, 2000, page 12.) For reasons set forth below, the court found the testimony of the defendant on this issue to be the more credible testimony.
Wayne Scott Allen, a friend of the defendant's who lived at 11 Windy Ridge Place in Waterford, testified at hearing. He was present at the yard sale on June 10, 2000. Mr. Allen stated that only a limited number CT Page 1723 of items belonging to the parties were sold at the yard sale.(Transcript, November 13, 2000, page 128). Mr. Allen described the articles sold at the yard sale as being "very insignificant small things." (Transcript, November 13, 2000, page 128). The court found this testimony to be credible.
Credible evidence adduced at hearing also established that after the defendant's arrest, he removed only a limited amount of personal property (primarily clothing) and a few briefcases from 9 Windy Ridge Place. (Transcript, November 13, 2000, page 126.) From June 11, 2000 until the plaintiff's relocation to Michigan in early September 2000 the marital homestead, and all of the possessions contained therein, were under the plaintiff's exclusive dominion and control. Accordingly, if, as plaintiff claimed during her testimony, there was an agreement between the parties concerning the disposition of the personal property in the home, it was never implemented. The court also notes that in the financial affidavit which the plaintiff submitted to the court on September 18, 2000 (which was after her relocation to Michigan), she listed personal property valued at $5,000.00 as being jointly owned.
During the hearing, the defendant submitted into evidence an extensive list of personal items which he claimed was an inventory of the personal property acquired by the parties during the marriage (Defendant's Exhibit 1). The court did not accept the values which the defendant ascribed to the property on Exhibit 1. The court does, however, find the list to be credible evidence of the personal marital property which was left in the marital home under the plaintiff's exclusive dominion and control after June 10, 2000.
Given the nature of the property listed in Defendant's Exhibit 1, including some items which the defendant identified as family heirlooms, the court finds that the defendant did not abandon his claim to the personal property of the marriage, and that the disposition of this property was still unresolved when the plaintiff relocated to Michigan in September 2000.
The evidence at hearing established that prior to moving, the plaintiff consigned various items of personal property to a neighbor, Jenny Olynciw, who resides at 7 Windy Ridge Place in Waterford. (Transcript, November 13, 2000, pages 83-97.) Ms. Olynciw stored this marital property in her garage, sold it at the request of the plaintiff and sent the plaintiff the proceeds from those sales. Ms. Olynciw stated that the amount which she sent to the plaintiff was less than $200.00. During her testimony, Ms. Olynciw listed specific items which were given to her by the plaintiff for sale. (Transcript, November 13, 2000, pages 90-96.) Ms. Olynciw said that some of the parties' marital property was sold to CT Page 1724 her son. She also testified that the plaintiff gave some property from the Windy Ridge Place residence to a friend named Doreen.
Although the court believes that Ms. Olynciw honestly answered all of the questions posed to her during hearing, the court did not find that her testimony was dispositive with respect to either the total amount of marital property which she received from the plaintiff, or the value of that property.
Mr. Allen testified that he saw Ms. Olynciw's garage after the plaintiff moved to Michigan in September 2000. He stated that Ms. Olynciw's garage was so full of the Dower's property that Ms. Olynciw could not park her car in there. (Transcript, November 13, 2000, pages 129-130.) Mr. Allen also corroborated Ms. Olynciw's testimony that she had been selling and disposing of this marital property. (Transcript, November 13, 2000, page 130.) The court found this testimony by Mr. Allen to be credible.
After the defendant was arrested and ordered to stay out of the marital premises, Mr. Allen began finding the defendant's clothing discarded in the garbage outside 9 Windy Ridge Place. Mr. Allen testified that: "Every Monday night I would check the garbage to make sure his mat — his clothing wasn't being thrown out and it was. I grabbed bags of it, brought it back to my garage and stored it in my garage and let him know that, not to worry that I had reclaimed some of it and it was in my garage." (Transcript, November 13, 2000, page 127.) Although Mr. Allen recovered some of the defendant's clothes, Mr. Dower indicated in Defendant's Exhibit 1 that he has not recovered numerous articles of clothing. These include sweaters, suits, shirts, shoes, pants, ties, hats, belts and a tuxedo (Defendant's Exhibit 1, page 5). The court has found Defendant's Exhibit 1 to be credible. It further finds that the defendant's claim about the loss of his clothing is supported by the credible account of Mr. Allen, and by the credible testimony of the defendant that he was only able to remove some items of summer clothing when he was required to vacate the marital residence in June.
Based on the clear and convincing evidence adduced at hearing, the court finds that the plaintiff has either disposed of an undetermined but substantial amount of the defendant's clothing by discarding it, or has retained items of defendant's clothing and removed them from this jurisdiction.
Mr. Allen testified credibly that he witnessed the plaintiff moving out of the Waterford residence in early September 2000. He testified that ". . . I saw a big truck, a big truck backed up against the garage in a fashion that I couldn't see what was going out. But — and another CT Page 1725 regular pick-up truck in my driveway had four or five trucks — or cars in it. And my driveway is co-joined with Al's. And lots of people scurrying around." (Transcript, November 13, 2000, page 129.)
The plaintiff's financial affidavit, which was filed with the court on September 18, 2000, reflects that she had miscellaneous personal property valued at $5,000.00. She indicated in her sworn affidavit that this is joint property. As previously noted, the plaintiff had exclusive use and possession of the marital residence at 9 Windy Ridge Place in Waterford since June 11, 2000. The evidence established that with the exception of the items mentioned above which the plaintiff discarded, sold or consigned to others, the balance of the marital personal property was taken by the plaintiff when she moved to Michigan last September.
The court finds by clear and convincing evidence that there was no agreement between the parties that plaintiff could discard, give away, consign, sell or remove the personal property of the marriage, and that there was no court order authorizing her to do so.
The plaintiff claims that she should not be found in contempt because it was not proven by clear and convincing evidence that proceeds from the items sold were not used to pay for her counsel fees or reasonable expenses. Plaintiff also contends that she was within her rights to remove the personal property without court order or agreement when she relocated to Michigan, because those items are still under the jurisdiction of this court. The court is not persuaded by either argument.
It is obvious that the plaintiff received no economic benefit from either discarding the defendant's clothing in the trash, or removing it to Michigan. The plaintiff withdrew $3,637.23 from the joint checking account at the Dutch Point Credit Union during the months of May and June 2000. She was employed until she moved to Michigan last September. The plaintiff's motion for alimony pendente lite and an allowance to prosecute (counsel fees) had been pending since the dissolution action was filed on April 26, 2000. (Transcript, September 18, 2000, page 3), The court awarded the plaintiff pendente lite alimony on September 18, 2000 (Transcript, September 18, 2000, page 89).
Based on all of the forgoing evidence, and upon the plaintiff's financial affidavit dated September 18, 2000, the court does not find that it was necessary or reasonable for the plaintiff to sell personal property in order to pay her counsel fees or meet current expenses.
Standing Order No. 1 prohibits either party from concealing or removing property individually or jointly held by the parties. Accordingly, the CT Page 1726 court also rejects the plaintiff's contention that her relocation to Michigan with all remaining items of personal marital property was permissible. The court is well aware of the allegations which resulted in the defendant's arrest.[3] However, the plaintiff did not need to resort to unilateral action. With the assistance of her competent counsel, she could have negotiated a distribution of the marital property prior to relocation, or sought a court order authorizing her to retain it. While the plaintiff was free to live in Michigan, she was not entitled to ignore a standing court order that prohibits the removal of marital assets without agreement, or court order.
The court attaches significance to the fact that on June 30, 2000, the defendant prepared a motion for inspection pendente lite in which he stated that ". . . the defendant Albert E. Dower, III has reason to believe that the plaintiff, Marlene Dower, has been discarding and/or removing personal property belonging to the defendant as well as joint personal property from the marital residence."[4] This motion, which was pending when plaintiff sold and removed the marital property, put the plaintiff on notice well before her relocation that the defendant was claiming an interest in, and accounting of, that personalty.
The pendency of that motion, and the evidence that the plaintiff discarded and/or withheld an undetermined but substantial amount of the defendant's clothing, leads the court to conclude that the plaintiff acted in bad faith, and in willful defiance of the standing orders.
The court finds as proven by clear and convincing evidence that the plaintiff has willfully and contemptuously violated the court's orders as alleged in Motion #120 Specifically, the court finds by clear and convincing evidence that the plaintiff violated Standing Order No. 1 by discarding or otherwise withholding and concealing from the defendant an undetermined but substantial amount of his personal clothing, by selling, or consigning for sale to Jenny Olynciw and others an undetermined but substantial amount of personal marital property, and by removing all of the remaining marital property to the state of Michigan. The court also finds by clear and convincing evidence that all of the aforesaid actions by the plaintiff were undertaken without agreement or court order, as required in Standing Order No. 1. Accordingly, Motion #120 is hereby granted, and a finding that the plaintiff is in wilful contempt of the court's standing orders may enter.
In the plaintiff's memorandum and during final argument, counsel for the plaintiff claimed that the defendant was not entitled to any relief under either contempt motion because the defendant purportedly made misrepresentations to the court during this proceeding. The plaintiff alleged that in the defendant's September 18, 2000 financial affidavit CT Page 1727 the defendant listed under the heading "Other Personal Property" the following: "home furnishings, furniture and other personal property — to be equitably divided with spouse, total value 0." (See Defendant's Financial Affidavit, September 18, 2000.)
The plaintiff asserts that the forgoing statement in defendant's financial affidavit was contradicted by the valuation which the defendant later attempted to place on that same personal property when he submitted Defendant's Exhibit 1 into evidence. In that exhibit, the defendant ascribed a value of $123,443.00 to the personal property of the marriage (As noted above, the court accepted Defendant's Exhibit 1 a competent listing of the personal marital property in dispute, but did not accept the value which the defendant ascribed to that property as being competent.) The plaintiff claims that the disparity between the zero value listed on the financial affidavit and the six figure amount listed in Defendant's Exhibit 1 constitutes a misrepresentation and contemptuous behavior by both the defendant, and his counsel.
At hearing, defendant's counsel explained that she was responsible for the zero value indicated for the personal property on defendant's financial affidavit. Counsel told the court that she initially assumed that the parties would equitably divide the joint personal property, and hence felt it was unnecessary to list a value for it on the affidavit. (Transcript, December 4, 2000, page 102.) The court notes that while the defendant's affidavit lists a value of "0" for the personal property, it also states that the property was to be divided equitably by the parties. Read in context, the court interprets that statement to indicate that the personal property had value, because a party presumably would not be concerned about the division of assets which are worthless. In the interest of complete accuracy, the defendant should have indicated the value of the personalty on the affidavit, or stated that the value was unknown, if that in fact was the case. However, the court accepts the representations of counsel concerning the error, and does not find that either the defendant or his attorney intentionally attempted to mislead the court.
 ORDERS
Having found the plaintiff in contempt, the court must fashion a remedy which protects the integrity of its order, and restores a "level playing field" with respect to the assets in dispute.
At this late date, the court does not believe that it would be either practical or advisable to order the return of all the marital personal property to Connecticut. Accordingly, the court issues the following orders: CT Page 1728
1. Within 30 days of the date hereof, the plaintiff shall provide a sworn affidavit to the defendant indicating with specificity the exact location or disposition of each item of personal property which was in the home at 9 Windy Ridge Place on June 10, 2000. This affidavit, which shall be subscribed by the plaintiff under penalty of false statement, shall set forth the following:
(a) a specific description of each item of personal property acquired during the marriage currently under the plaintiff's dominion, possession or control, and its location;
(b) a description of each item of personal marital property which the plaintiff has sold, consigned or given to any other person since June 10, 2000. This portion of the sworn affidavit shall also include the name and address of each person to whom each item of property was sold, consigned or given; the date each item was sold, consigned or given; the amount of money which the plaintiff or any other person received for each item of personal property which was sold, consigned or given;
(c) A specific listing of each item of personal property (including the defendant's clothing) which the plaintiff discarded or otherwise disposed of in any manner.
2. Within 45 days of the date hereof, the plaintiff shall permit representatives of the defendant to inspect, inventory, photograph and appraise all items of personal property acquired by either party during the marriage which are in the plaintiff's possession, dominion or control. The plaintiff shall permit the defendant's representatives to enter her residence in Michigan and any other building or structure owned, rented or controlled by her wherever any item of marital personal property may be located, in order to conduct said inspection. This inspection shall take place on a date and at a time mutually convenient to the parties and the plaintiff shall permit the defendant's representative sufficient time to inspect, inventory, photograph and appraise all items of personal property under her possession, dominion or control. As used in this order, photograph means the taking of both still photographs and video graphic recordings. Up to three representatives of the defendant may conduct said inspection. Given the allegations that the defendant has previously damaged marital property, and in light of the existing restraining order against the defendant, the defendant may not be present at this inspection. The plaintiff and her representatives may be present while this inspection is conducted. The court directs that the counsel for the parties shall meet within 15 days of the date hereof to satisfactorily conclude all logistical arrangements with respect to this inspection. The court orders that the parties shall cooperate completely CT Page 1729 with the completion of these arrangements and said inspection.
3. The defendant may hire personnel to inventory, photograph and appraise the property under plaintiff's dominion, possession or control. The defendant may hire an appraiser to analyze or reconstructively appraise the value of the personal property of the marriage as it existed on June 10, 2000. The court orders that the reasonable cost incurred by the defendant in photographing, inventorying and appraising the personal property of the marriage shall be paid by the plaintiff as set forth herein. To that end, the plaintiff shall pay to the defendant, within 30 days of the date hereof, the sum of $500.00 to be used as a retainer for hiring the personnel necessary to perform the inventory photography and appraisal. The court finds said sum to be reasonable and necessary to enable the defendant to retain the services referred to above. The defendant is to use said sum solely as a retainer for the purpose of hiring the services specified above. In the event that the fees for said services exceeds the sum of $500.00, the trial court, at the time of final dissolution, shall determine what additional portion of these fees, if any, shall be borne by the plaintiff.
4. The defendant has requested counsel fees in connection with the bringing of Motion #120. The court, however, believes that the overall issue of counsel fees should be deferred until the trial court has had the opportunity to view the all of the issues and equities in this case. Accordingly, this court makes no finding with respect to the defendant's claims for counsel fees and defers that issue to the court hearing the dissolution trial.
5. The court reminds both parties that they are still subject to all of the standing orders of this court which became effective at the outset of this action.
Dated at New London, Connecticut this 31st day of January 2001.
BY THE COURT
Dyer, J.